PEARSON *vs.* FORSYTH, administrator.

1. When objection is made to the matter of testimony, and not to the medium, the competency of the medium is not in question. Thus, where a memorandum was sought to be introduced and it was objected to on the ground that the contents were but the sayings or declarations of the defendant in execution, the point raised for decision was not whether the given sayings or declarations could be proved in the manner proposed, but whether, in and of themselves, they were admissible evidence.

2. Where a deed from the defendant in execution to the claimant, his sister in-law, was made pending the creditor's suit and shortly after the debtor had become insolvent, which deed expressed a consideration of three thousand dollars and acknowledged the receipt of that sum, and where, on the trial of a claim, the deed is sought to be avoided by the plaintiff as voluntary, or else as fraudulent in fact, the declarations of the defendant made in the course of giving instructions for writing the deed, on the day preceding its execution, are relevant testimony in behalf of the plaintiff, though the defendant was not then in possession of the premises, and though the claimant was not present when the instructions were given, a memorandum thereof having been made by the scrivener at the time in these terms: "October 13th, 1873—Nos. 12 and 13, in Oostanaula

Division of Rome, were conveyed to Mrs. Mary Pearson. Before the war, W. S. sold her this property for three thousand dollars, re-purchased it during the war, and paid her for it in 7-30 notes. After the war, sold it back to her for three thousand dollars again. He holds her note for it, makes her a deed because she has never been satisfied with the sale for Confederate money." The scrivener having written and attested the deed, and having. moreover, at the request of the defendant, acted as the agent of the claimant in receiving it so as to render the delivery complete in the absence of the claimant, the declarations noted in the memorandum were a part of the *res gestae,* and tended to illustrate the motive and purpose of the conveyance on the part of the maker thereof.

3. The charge as given by the court to the jury was substantially correct. The verdict was not contrary to law, and there was evidence enough to justify it, inasmuch as the nature of the case was such as to leave a wide scope for inference and general reasoning by the jury. .

Evidence. Practice in the Superior Court. Fraudulent conveyance. New trial. Before Judge UNDERWOOD. Floyd Superior Court. January Adjourned Term, 1878.

An execution in favor of Mitchell, based on a judgment against Cothran, obtained on July 21st, 1874, was levied upon certain lots in the city of Rome, and a claim thereto interposed by Mary A. Pearson. Upon the issue thus formed, Forsyth, the administrator of Mitchell, showed title conveyed to the defendant on December 15th, 1856, and closed. The claimant showed title from defendant to her, conveyed on October 14th, 1873, (at which time the creditor's suit was proceeding), and closed.

Plaintiff introduced Joel Branham, who testified, in substance, as follows : The memorandum (that quoted in the second head-note) was written on October 13th, 1873, by witness, in the presence of Cothran, and from his statements. He was giving witness directions to prepare a deed to the property to Mrs. Pearson. The deed was not drawn and signed until the next day. When it was executed, Cothran delivered it to witness for Mrs. Pearson, making him her agent to receive it. No money was paid or note given. Cothran was then insolvent. (The plaintiff here

introduced the memorandum referred to.) Cothran lived on this property in 1870 or 1871. It was worth for rent in 1866 $50.00 per month. Rents were then high. The letters " W. S." in the memorandum, means W. S. Cothran.

W. S. Cothran, son of the defendant in *fi. fa.*, testified that his father lived on the property in 1866; that he does not remember when he moved away, as witness was then absent at school; that he found the following note on Mrs. Pearson amongst his father's papers after his death; that his father died on July 20th, 1877.

Note referred to introduced by plaintiff:

$3,000.00.                              "ROME, GA., January 1st, 1871.

"Twelve months after date I promise to pay to W. S. Cothran or bearer, three thousand dollars, for value received for town property, real estate in the city of Rome, with interest from date.

(Signed)                          MARY A. PEARSON."

The claimant testified as follows: Being alone in the world, I entrusted all my property to W. S. Cothran, who was my brother-in-law. I owned valuable negroes, and he hired them out for me, having general charge of all my business. In the year 1856, the lots levied on were bought by Cothran for me and paid for with my money. I went into immediate possession of the property and so remained until just before Rome was evacuated by the Confederate army. The lots were always known as belonging to me, but the deed, without my knowledge or consent, was taken to Cothran. Just before the evacuation, Cothran advised me to sell the property and to invest in cotton, and I agreed to sell to him. This occurred in January, 1863. Cothran was to invest in cotton for me, but he neither paid me any money nor did he make any investment, nor did I ever give to him any deed or writing. This contract was verbal. After the summer Cothran returned, took possession of the property, and held it until 1870. At about the latter date he gave me his bond for titles, claiming that he had expended on the property in taxes, repairs and improve ments $3,000.00 or over, and required me to give him my note for that amount, which I did. Thus matters stood

34

until October, 1873, I claiming all the time that if I had to pay for taxes, repairs, etc., he ought to pay for the rent. At the time his deed to me was executed, he agreed to settle by allowing my claim to off-set his, and I accepted the deed and surrendered the bond for titles. The property rented after the war for $50.00 per month. Cothran did not return me my note, though he said he would do so ; I do not know where it is, but he assured me when I gave up the bond that it should never come against me. I first went into possession of the property on December 23d, 1856, and left it in December, 1863. I again resumed possession of it about the 1st of March, 1870, and have so remained ever since.

It was admitted that the debt on which the judgment against Cothran was based, existed at the date of the deed to claimant.

The jury found the property subject. The claimant moved for a new trial upon the following grounds :

1. Because the verdict was contrary to law and evidence.

2. Because the court erred in admitting in evidence the memorandum made by Branham on October 13th, 1873, the objection made thereto upon the trial being that it was but the sayings or declarations of Cothran, in the absence of claimant, and when he was not in possession of the property levied on.

3. Because the court erred, after charging as requested by claimant as follows : "If the jury believe from the evidence that Cothran used the claimant's money in purchasing the land in controversy, and took the deed to himself, and made the deed of October 14th, 1873, to Mrs. Pearson on this account, this would be a valuable consideration, whether a dollar was paid by Mrs. Pearson to Cothran at the time of making the deed or not. And if Mrs. Pearson had, before that time, bought the land from Cothran and given her note for the purchase money, and said note had been paid by adjustment of rents, taxes, etc., between the parties, the same would be a valuable consideration," in adding the following qualification, to-wit : "This would not be the law if Coth-

ran simply owed Mrs. Pearson money, and bought for himself, paying his own money for the property."

4. Because the court erred after charging the jury as requested by claimant as follows : "If Cothran owed Mrs. Pearson a precedent debt, or if she had bought said land from him before he made the deed of October 14th, 1873, and given him her note for $3,000.00 for the same, and Cothran had said note, the same would constitute a a valuable consideration, whether any money was paid at the time of making the deed or not," in adding the following qualification : "Provided the transaction was *bona fide*, and the note was a valid subsisting debt against Mrs. Pearson, not canceled," reading also §3197 of the Code.

The motion was overruled and the claimant excepted.

DABNEY & FOUCHE, for plaintiff in error, cited, on admission of memorandum, 16 *Ga.*, 114 ; 52 *Ib.*, 564; 20 *Ib.* 240 ; Code, §3784. On consideration for deed, Code, §2616 49 *Ga.*, 120.

WRIGHT & FEATHERSTON, for defendant, cited, on admission of memorandum, Code, §3773 ; Bump. on F. C., 562 *et seq.* ; 14 Mass., 245.

BLECKLEY, Justice.

A judgment for a large debt was rendered in 1874. The *fi. fa.* issued thereon was levied, in 1876, upon certain premises, the same being a family residence in the city of Rome. A claim was interposed by a sister-in-law of the defendant in *fi. fa.* The evidence of paper title in the defendant was a deed in fee simple, made to him in 1856 by a person then in possession. The consideration expressed was three thousand dollars. It appeared that the claimant (not the defendant), went into possession immediately after the purchase, and that she remained in possession until December, 1863. It further appeared that the defendant took possession in 1866, and retained it until March, 1870, and that the claim-

ant then resumed possession, and has kept it ever since. It further appeared that on the first of January, 1871, the claimant gave her negotiable promissory note to the defendant for three thousand dollars, due at twelve months, with interest from date, the note expressing on its face that it was "for town property—real estate in Rome." This note was produced at the trial, having been found among the defendant's papers after his decease, which took place in July, 1877. The evidence of paper title in the claimant was a deed from the defendant, conveying the premises to her in fee simple. This deed bore date October 14, 1873. The consideration expressed was $3,000.00. It was admitted that the suit in which the judgment was rendered was pending when this conveyance was made, and had been pending for some years. There was evidence that the defendant became insolvent in September, 1873. The claimant sought to establish title in herself thus: First, she alleged that her money was used by the defendant to pay for the premises when he purchased in 1856; that he purchased for her and at her request, but took the conveyance to himself without her knowledge or consent, and that, therefore, a trust resulted to her by operation of law. Secondly, she alleged that in 1863 she verbally bargained the premises to the defendant; that he paid nothing on the contract, though he afterwards entered into possession; that he enjoyed the rents and profits until she re-entered in March, 1870; that, at the time she gave the note above referred to, he gave her a bond for titles; that the note was not in fact given for purchase money, but for money which he said he had expended for taxes and improvements; that she claimed then, and continued to claim, that if she had to pay him for taxes and improvements, he ought to account to her for the rents, which were worth fifty dollars per month; that when he conveyed to her, in October, 1873, the adjustment was based on a recognition of her demand, he agreeing to treat the note as paid by the rents, and promising to surrender it, or that it should never come against her; that she then surrendered to him the bond

for titles, and that the note, though discharged in the manner stated, had never been delivered up. There was evidence tending to verify these several facts, but, as to most of them, only the testimony of the claimant herself. She was a witness in her own behalf. The plaintiff in *fi. fa.* stood upon the paper title as proved in the defendant up to and after his insolvency, together with his possession from 1866 to 1870, and sought to avoid the conveyance from him to the claimant as voluntary, or, if not voluntary, as made to defraud creditors. On the day preceding the execution of that conveyance, the defendant gave instructions by which to prepare the deed. The person to whom they were given made a memorandum, in his presence, of his instructions and statements. That person wrote the deed, and attested it as one of the witnesses. He, also, at the request of the *defendant*, acted as agent for the claimant in receiving delivery of the deed, she not being present. The memorandum was in these words: "Oct. 13, 1873. No. 12 and 13, in Oostanaula Div. of Rome, were conveyed to Mrs. Mary Pearson. Before the war, W. S. sold her this property for 3 m dollars, re-purchased it during the war and paid her for it in 7.30 notes. After the war, sold it back to her for 3 m again. He holds her note for it, makes her a deed because she has never been satisfied with the sale for Confederate money."

1, 2. At the trial, the foregoing memorandum was admitted in evidence (together with the testimony of the maker of it), the claimant objecting upon the ground that the memorandum "was but the sayings or declarations of the defendant in *fi. fa.*, made in the absence of the claimant, and when the defendant was not in possession of the property." There may be some other ground on which, if it had been presented, the memorandum should have been excluded. The ground taken conceded that the memorandum embodied the declarations of the defendant. These declarations were a part of the *res gestœ* of making the deed to the claimant, and they serve to illustrate the motive and purpose

of the maker. They bear, in some degree, upon the question of fraud, in so far as that question has concern with the mind of one of the parties. The deed purports to have been made for and in consideration of the sum of three thousand dollars, the receipt whereof is acknowledged on the face of the deed; the memorandum throws light on the meaning of this acknowledgement. The objection to the evidence was properly overruled.

3. It is complained that the court erred in charging the jury, and in not charging certain requests of the claimant, without addition of qualification. The substance of the charge was correct, and nothing was added to the requests which a possible view of the facts in evidence did not render appropriate. It is further complained that the verdict was contrary to evidence and to law. No law was violated by it. The evidence was enough; for the claimant was her own witness, and the nature of the case was such as to leave a wide scope for the jury to reason and infer. It may be that we should have found differently, had we been of the panel.

Judgment affirmed.